UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

S<span/>HAQUAN K<span/>ELLY,

    Plaintiff,      Case No. 2:20-cv-49

v.              Honorable Paul L. Maloney

U<span/>NKNOWN L<span/>ABELLE et al.,

    Defendants.
_____/

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Basal, Wyatt, and Shagena. The Court also will dismiss one of Plaintiff's Eighth Amendment claims against Defendant Labelle. Plaintiff's other Eighth Amendment and retaliation claims against Defendant Labelle remain in the case.

**Discussion**

**I.      Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MBP Correctional Officers Unknown Labelle, Pamela Basal, Unknown Wyatt, and Unknown Shagena.

Plaintiff alleges that, on December 15, 2019, at approximately 7:06 p.m., while Plaintiff was in belly chains and cuffs, Defendant Labelle informed Plaintiff that he needed to be shaken down or searched. Because Plaintiff and his family had made a number of complaints about Defendant Labelle, Plaintiff worried that Labelle would assault him. He therefore asked Correctional Officer Mayer (not a Defendant), who also was present, if Mayer would conduct the search. In response, Defendant Labelle punched Plaintiff in the face, yelled at Plaintiff to stop resisting, and pulled out one of Plaintiff's dreadlocks, causing Plaintiff's scalp to bleed. A misconduct charge was filed against Plaintiff.

Later that day, Defendant Wyatt reviewed Plaintiff on the misconduct ticket. Wyatt allegedly refused to record that Plaintiff asked for a hearing investigator, witnesses, and relevant documents, and had requested that the video recording of the incident be preserved. Plaintiff alleges that Defendant Wyatt violated Plaintiff's right to due process and attempted to cover up the assault.

Plaintiff wrote a grievance against Defendant Labelle. On December 17, 2019, after Plaintiff wrote his grievance, Defendant Labelle, while delivering meals, called Plaintiff "Grievance Writer" and refused to give him a food tray. Plaintiff appears to allege that Defendant Labelle used excessive force in assaulting Plaintiff and in denying him a meal, in violation of the

Eighth Amendment. He also alleges that Defendant Labelle retaliated against Plaintiff for filing grievances.

That same day, Defendant Basal made a comment near Plaintiff's cell, saying, "You're the other one that likes to write grievances." (Compl., ECF No. 1, PageID.7.) Plaintiff originally thought that Basal was talking to his neighboring prisoner. When Basal came to Plaintiff's cell, Plaintiff told Basal that he had a statement and witnesses and wanted the video of the assault. Defendant Basal instructed Plaintiff to place the written statement on his bars and step back. When Plaintiff complied, Defendant Basal then slammed Plaintiff's cell door and refused to give him an investigator. Plaintiff later learned that Defendant Basal used to be a guard who had worked with the individuals involved in the assault on Plaintiff. Plaintiff contends that Defendant Basal exceeded her authority, violated Plaintiff's right to due process, and acted to cover up the assault.

Plaintiff alleges that, on December 20, 2019, Plaintiff received a copy of a misconduct hearing report issued by a hearing officer. Plaintiff alleges that he was never informed that a hearing was scheduled and was not offered the chance to attend. Defendant Shagena allegedly reported to the hearing officer that Plaintiff had refused to attend. Plaintiff claims that he does not know Defendant Shagena. He alleges that Defendant Shagena exceeded his authority, denied Plaintiff right to due process, and acted to cover up the assault.

Plaintiff seeks injunctive relief, together with nominal, compensatory, and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

3

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Defendant Labelle

Plaintiff alleges that Defendant Labelle used excessive force and deprived Plaintiff of a meal, in violation of the Eighth Amendment. Plaintiff also alleges that Defendant Labelle committed both acts and wrote a false misconduct charge in retaliation for Plaintiff's exercise of his First Amendment right to file grievances.

#### A. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

5

### 1. December 15, 2019, Assault

Plaintiff complains that Defendant Labelle maliciously punched him in the face and pulled out one of his dreadlocks, despite the fact that Plaintiff was not engaged in any conduct requiring physical intervention. Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

In determining whether a prisoner has been subjected to excessive force, the Court must examine both the objective and subjective components of an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials

6

maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's allegation that Defendant Labelle punched him in the face and pulled out a section of his hair are sufficient to state an Eighth Amendment claim for excessive force.

### 2. Denial of Meal

Plaintiff alleges that Defendant Labelle denied him a meal tray on December 17, 2019, in violation of Plaintiff's rights under the Eighth Amendment. "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution, however, "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14

7

(N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Here, Plaintiff alleges that he missed a single meal. Applying the previously cited cases, Plaintiff does not state a plausible Eighth Amendment claim arising out of the denial of his meal. Accordingly, this portion of Plaintiff's Eighth Amendment claim will be dismissed.

### B. Retaliation

Plaintiff argues that Defendant Labelle's actions—the physical assault, the writing of a false misconduct ticket, and the meal deprivation—were taken in retaliation for Plaintiff's exercise of his First Amendment right to file grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he had filed a number of grievances against Defendant Labelle prior to the assault and that he filed a grievance on the assault immediately prior to the meal denial. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's allegations are sufficient to state a retaliation claim against Defendant Labelle.

8

### IV. Defendants Basal, Wyatt, & Shagena

Plaintiff alleges that Defendants Basal, Wyatt, and Shagena exceeded their authority, violated Plaintiff's right to due process, and covered up Defendant LaBelle's unconstitutional conduct by interfering with Plaintiff's ability to fully defend the misconduct charges against him.

#### A. Due Process

Plaintiff does not specify whether he was charged with a major misconduct or a minor misconduct. Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. However, even if Plaintiff was convicted of a Class-I major misconduct, he fails to state a due process claim.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the

protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Plaintiff also has not alleged that he suffered a "significant and atypical deprivation." Indeed, Plaintiff does even not indicate whether the misconduct conviction resulted in a sanction of punitive segregation, toplock, or loss of privileges. Nor has he alleged the duration of any such sanction.

The Court notes that, under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The Supreme Court has held that placement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in

their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Here, even if Plaintiff received the maximum sanction for a Class-I misconduct violation, his sanction would have fallen short of the sanction in *Sandin*, which the Supreme Court

found did not implicate a liberty interest. A punitive-segregation sanction under the policy therefore would not create an interest protected by due process.

Moreover, if Plaintiff's confinement in punitive segregation would not implicate a protected liberty interest, it follows that the loss of privileges or other lesser sanctions stemming from that confinement do not implicate such an interest. Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"). Consequently, any loss of privileges would not have affected Plaintiff's liberty interest.

Because Plaintiff had no liberty interest in the misconduct proceedings, the actions of Defendants Basal, Wyatt, and Shagena did not violate Plaintiff's right to due process.

### B. Exceeding Authority

Plaintiff contends that Defendants Basal, Wyatt, and Shagena exceeded their authority, apparently by not following the policy for misconduct proceedings by misrepresenting Plaintiff's request for a hearing investigator, witnesses, and preservation of the video, and by not allowing him to attend the hearing. *See* MDOC Policy Directive 03.03.105 (eff. April 9, 2012) (Prisoner Discipline policy).

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Plaintiff therefore fails to state a claim under § 1983 based on Defendants' failures to follow MDOC policy providing Plaintiff certain state procedural rights under state law.

### C. Covering Up Defendant Labelle's Actions

Plaintiff alleges that Defendants "covered up" Defendant LaBelle's actions by failing to take action that would allow Plaintiff to defend against the misconduct charge. As discussed in prior sections of this opinion, to the extent that Plaintiff alleges that Defendants failed to follow state policy, he fails to state a § 1983 claim. Moreover, to the extent that Defendants declined to assist Plaintiff in defending against the misconduct charges, they did not violate his right to due process, because Plaintiff had no liberty interest in the misconduct proceeding.

Finally, to the extent that Plaintiff intends to suggest that Defendants are liable for Defendant Labelle's allegedly unconstitutional actions, he also fails to state a claim. Government officials may not be held liable for the actions of others under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S.

658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants engaged in any active unconstitutional behavior. According to Plaintiff's allegations, Defendants engaged in no active conduct to assist Defendant Labelle in assaulting Plaintiff, falsely charging Plaintiff with a misconduct, or depriving Plaintiff of a meal. As a consequence, Plaintiff fails to state a claim against Defendants Basal, Wyatt, and Shagena.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Basal, Wyatt, and Shagena will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim based on the deprivation of a meal. Plaintiff's other Eighth Amendment and retaliation claims against Defendant Labelle remain in the case.

An order consistent with this opinion will be entered.

Dated: June 18, 2020                                     /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge