UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAQUAN KELLY #792018,

        Plaintiff,

v.

UNKNOWN LABELLE, et al.,

        Defendants.
_____/

Case No. 2:20-cv-00049

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Shaquan Kelly pursuant to 42 U.S.C. § 1983. Kelly filed a verified complaint on April 20, 2020. (ECF No. 1, PageID.7.) On June 18, 2020, the Court issued an opinion and order dismissing Defendants Basil, Wyatt, and Shagena, and Plaintiff's Eighth Amendment claim against Defendant Labelle for denying him a meal on December 17, 2019. (ECF Nos. 4 and 5.) Only Corrections Officer (CO) Labelle remains as a Defendant in this case.

Kelly has three claims against Labelle for alleged violations of the First and Eighth Amendments. Specifically, Kelly's claims are:

(1) an Eighth Amendment claim against Labelle for allegedly punching Kelly in the face and pulling out one of his dreadlocks on December 15, 2019, during a pat-down search;

(2) a First Amendment retaliation claim for conducting the pat-down search and assaulting Kelly on December 15, 2019, and;

(3) a First Amendment retaliation claim for issuing a misconduct ticket arising out of the December 15, 2019, incident.

CO Labelle has filed a motion for summary judgment that asserts that Kelly failed to properly exhaust his available administrative remedies. (ECF No. 17.) Labelle has provided documents showing that did not exhaust a grievance through Step III of the Michigan Department of Corrections (MDOC) grievance process during the relevant time. (ECF No 18-3, PageID.97.) Kelly filed a response. (ECF No. 23.) He argued that MDOC officials thwarted his ability to exhaust his administrative remedies. Officer Labelle filed a reply. (ECF No. 29.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny the motion for summary judgment.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

4

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

5

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681,

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at \*13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

8

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Analysis

### 1. Retaliatory misconduct ticket

The misconduct tickets that Kelly received describe conduct much different from what Kelly alleged in his complaint. First, on December 15, 2019, Kelly received a Class I misconduct ticket from Officer Mayer for assault resulting in serious physical injury. (ECF No. 29-2, PageID.177.) Officer Mayer reported that he was transported via ambulance to U.P. Health Systems Marquette for a head injury after Kelly elbowed him in the head. (*Id.*) Second Kelly received a Class I or II misconduct ticket from Officer Labelle for assault and battery/disobeying a direct order. (ECF No. 29-2, PageID.176.) The date and times written on the two misconduct tickets confirm that the tickets relate to the same incident.

Labelle's misconduct ticket states in part:

> Misconduct Class: ☒ I  ☒ II  ☐ III    Charge(s): Assault and Battery/Disobeying a Direct Order
> Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses):
> While escorting Prisoner Kelly 792018 to Echo yard, I told the prisoner to stop for a shakedown. Prisoner Kelly stated "I don't want you fucking touching me." Prisoner Kelly began to advance forward pulling on the restraint strap. I then gave Prisoner Kelly a direct order to return to his cell. Prisoner Kelly turned and faced me and stated that he wasn't going in his cell. I put my left hand on Kellys right arm and right hand on the prisoners right shoulder and placed him against the vestibule glass in front of Echo Base 8. Prisoner Kelly was actively resisting my direction by pushing back against my hands. Prisoner Kelly was placed on the floor where he continued to disobey staff orders to stop resisting by swinging his arms and attempting to kick his legs. Kelly was ID'd by echo block master count board and frequent daily contact.

(*Id.*)

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

Kelly alleges that the misconduct ticket he received from Defendant Labelle was retaliatory. To exhaust a retaliatory misconduct ticket, Kelly needed to assert his retaliation claims during his misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. CO Labelle, however, failed to attach a copy of the misconduct hearing report to his motion and therefore, it is unknown what occurred during the misconduct hearing process.

Kelly asserts that, on December 20, 2019, he was given a copy of the misconduct hearing report, despite never receiving notice of the hearing. (ECF No. 1, PageID.6.) Kelly asserts that he was not allowed to attend a misconduct hearing. (*Id.*) The hearing report is not part of the record and it is not clear if Kelly filed an appeal of the result of the hearing. In the opinion of the undesigned, Defendant has not met his burden of establishing that Kelly failed to exhaust his administrative remedies on his retaliatory false misconduct ticket claim.

### 2. Excessive force and retaliation

Kelly argues that he exhausted his grievance remedies by filing **grievance MBP-19-12-1662-27A** at Step I. Kelly states that his grievance was improperly rejected as non-grievable because it related to his misconduct ticket. Kelly explains that he was not grieving his misconduct ticket but Officer Labelle's action in assaulting him.

As for his grievance, Kelly says that he requested a Step II grievance form after his Step I grievance was rejected. Kelly says he received the Step II form and filed a Step II grievance appeal, but never received a response. CO Labelle says that

although Kelly was provided a Step II grievance form, he never filed a Step II grievance. Indeed, Kelly does not claim that he filed a Step III appeal.

Kelly argues that Defendants thwarted his ability to use the grievance process by improperly denying his grievance as non-grievable and by threatening him with placement on modified access to the grievance process if he continued to file grievances. (ECF No. 23, PageID.126-127.)

It is undisputed that Kelly filed **grievance MBP-19-12-1662-27A** at Step I. A review of the Step I grievance shows that Kelly alleged that Officer Labelle assaulted him on December 15, 2019, and that Officer Labelle knew that Kelly and his family members had complained about the mistreatment he was receiving from Officer Labelle. A copy of the Step I grievance is shown, in part, below. The Step I response is shown at the bottom of the document.

> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Shaquan Kelly | 792018 | M.R.P | E-B-7 | 12-15-19 | 12-16-19 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 12/15/19
> If none, explain why. I told Sgt.s & Mental Health Workers but Nothing happend
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. This grievance is directed at C/o LaBelle for ==Assaulting me== while in hand Cuff's & Chain s. On 12-15-19 at around 7:06 in the morning C/o LaBelle told me he gots to shake me down, which ever body knows I been having my family ==call down to Lansing about the Mistreatment== by C/o LaBelle & others. So when he said shake down, I said you are not abouts to touch me! C/o LaBelle Response was, ether you take a shake down or go back in your fucking cell. So I turn around to tell C/o Major to shake me down & before I could Say anything C/o ~~_____~~ ==LaBelle puched me in my face & yelled stop resisting==. At No time did I become aggressive into he puncred me in my face, As you see on E-Russ Video between Cell's 5, 6 & 7. And as a state employee he did not have no right to punch me in my face & ==pull out one of my Hair locks==. I need the Video from Camera Russ Cell's between 5, 6, & 7. Saved for further Prosecutions. This need to be address & confronted, ~~_____~~ Just because we are prisoners & they are C/o's & tell us what to do Does not give them a right to Abuse the Authorit & punch a Chained up Prisoner in the face like a street fight & cover it up by yelling Stop resisting while hes pushing h.s weight on me making me have No choice but to Move. This Needs to be address at the highest level in prison recorses. I am h~~_____~~ or Pursuing Charges!
>
> _Shaquan Kelly - 792017 C.C._
> Grievant's Signature
>
> RESPONSE (Grievant Interviewed?)  ☐ Yes  ☒ No (XX)  If No, give explanation. If resolved, explain resolution.
>
> Your grievance is being rejected because you did not follow PD 03.02.130 which states that non-grievable issues shall be rejected. On 12/15/19 you were issued a Class I Misconduct for (Assault and Battery – staff victim)/Disobeying a Direct Order which was authored by the staff member mentioned in the Step I grievance. The grievance procedure is an improper means with which to challenge the validly in a Class I Misconduct. Grievance rejected according to policy.

(ECF No. 29-2, PageID.175.)

As shown, the MDOC rejected Kelly's Step I grievance because it asserted what the MDOC viewed as a non-grievable issue relating to the misconduct ticket issued by Defendant Officer Labelle. Kelly explains that he was not challenging his misconduct ticket in his grievance. Kelly grieved the assault and asserted facts in his grievance that set forth both his Eighth Amendment and his First Amendment retaliation claims for the alleged assault. Kelly claims that he filed a Step II appeal, but never received a response. (ECF No. 23, PageID.127.) Labelle states that Kelly

12

never filed a Step II appeal despite receiving a Step II form. However, since the response stated that the issues presented in Kelly's grievance were non-grievable issues, the MDOC prevented Kelly from exhausting his First Amendment and Eighth Amendment claims through the grievance process.

The MDOC's response left Kelly with one option: raise his claims in the misconduct hearing. This option is problematic because Kelly claims that he was never allowed to attend his misconduct hearing. (ECF No. 1, PageID.6.)

Kelly was caught in proverbial "Catch-22" situation.[4] First, the MDOC told him that he could not file a grievance on his excessive force and retaliatory assault claims because those claims were non-grievable; now, CO Labelle asserts that Kelly's complaint should be dismissed because he failed pursue his grievance all the way through Step III. (ECF No. 18, PageID.82.)

### 3. Official capacity claim

To the extent that Kelly is suing Officer Labelle in his official capacity, such a claim is barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit

---

[4] "[A] problematic situation for which the only solution is denied by a circumstance inherent in the problem or by a rule." *See* https://www.merriam-webster.com/dictionary/catch-22 (last visited April 21, 2021).

13

against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Kelly seeks money damages, costs, and fees from CO Labelle in his official capacity, that part of his lawsuit is barred by sovereign immunity.

## VI. Recommendation

The undersigned respectfully recommends that this Court deny in part and grant in part Defendant's motion for summary judgment. It is recommended that the Court dismiss Kelly's claims for monetary damages from Defendant Labelle in his official capacity. It is recommended that the Court deny the motion in all other respects.

If the Court accepts this recommendation, three claims will remain against Defendant Labelle in his personal capacity: (1) Kelly's Eighth Amendment excessive force claim; (2) Kelly's First Amendment retaliation claim for assault; and (3) Kelly's First Amendment retaliatory misconduct ticket claim.

Dated:  May 12, 2021                     /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).