UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAQUAN KELLY #792018,

    Plaintiff,

v.

UNKNOWN LABELLE, et al.,

    Defendants.
_____/

Case No. 2:20-cv-00049

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Labelle's second motion for summary judgment, which asserts that Plaintiff failed to exhaust his administrative remedies with respect to one of the three remaining claims in the case, namely, Plaintiff's claim that CO Labelle issued a misconduct ticket to Plaintiff to retaliate against Plaintiff. (ECF No. 36.)

Plaintiff state prisoner Shaquan Kelly brought this civil rights action pursuant to 42 U.S.C. § 1983. Kelly filed a verified complaint on April 20, 2020. (ECF No. 1, PageID.7.) On June 18, 2020, the Court issued a screening opinion and order dismissing Defendants Basil, Wyatt, and Shagena, and Plaintiff's Eighth Amendment claim against Defendant Labelle for denying him a meal on December 17, 2019. (ECF Nos. 4 and 5.) As a result, only Kelly's Eighth Amendment excessive

force and two First Amendment retaliation claims against CO Labelle remained in this case.

CO Labelle filed his first motion for summary judgment based on failure to exhaust administrative remedies on September 10, 2020. (ECF No. 17.) On May 12, 2021, the undersigned issued an R&R (ECF No. 32) recommending that Labelle's motion be denied. The Court subsequently adopted this R&R. (ECF No. 40.)

CO Labelle, however, moved for leave to file a second motion for summary judgment based on failure to exhaust, which the undersigned granted. (ECF Nos. 33, 39.)

Despite this rather convoluted history, Kelly still has three claims against Labelle for alleged violations of the First and Eighth Amendments. Specifically, Kelly's claims are:

(1) an Eighth Amendment claim against Labelle for allegedly punching Kelly in the face and pulling out one of his dreadlocks on December 15, 2019, during a pat-down search;

(2) a First Amendment retaliation claim against Labelle for conducting the pat-down search and assaulting Kelly on December 15, 2019; and

(3) a First Amendment retaliation claim against Labelle for issuing a misconduct ticket arising out of the December 15, 2019, incident.

Kelly's third claim is at issue in this R&R. CO Labelle's second motion for summary judgment asserts that Kelly failed to properly exhaust his available

2

administrative remedies with respect to his third claim. (ECF No. 36.) Kelly has not filed a response.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant CO Labelle's second motion for summary judgment and dismiss Kelly's claim that the misconduct tickets were retaliatory.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

1  Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

5

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

7

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

### IV. Analysis

The misconduct tickets that Kelly received describe conduct much different from what Kelly alleged in his complaint. First, on December 15, 2019, Kelly received a Class I misconduct ticket from CO Mayer for assault resulting in serious physical injury. (ECF No. 37-2, PageID.217.) CO Mayer reported that he was transported via ambulance to U.P. Health Systems Marquette for a head injury after Kelly elbowed him in the head. (*Id.*) Second Kelly received a Class I or II misconduct ticket from CO Labelle for assault and battery / disobeying a direct order. (ECF No. 37-2, PageID.216.) The date and times written on the two misconduct tickets confirm that the tickets relate to the same incident.

Labelle's misconduct ticket states in part:

> Misconduct Class: ☒ I ☒ II ☐ III    Charge(s): Assault and Battery/Disobeying a Direct Order
> Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses):
> While escorting Prisoner Kelly 792018 to Echo yard, I told the prisoner to stop for a shakedown. Prisoner Kelly stated "I don't want you fucking touching me." Prisoner Kelly began to advance forward pulling on the restraint strap. I then gave Prisoner Kelly a direct order to return to his cell. Prisoner Kelly turned and faced me and stated that he wasn't going in his cell. I put my left hand on Kellys right arm and right hand on the prisoners right shoulder and placed him against the vestibule glass in front of Echo Base 8. Prisoner Kelly was actively resisting my direction by pushing back against my hands. Prisoner Kelly was placed on the floor where he continued to disobey staff orders to stop resisting by swinging his arms and attempting to kick his legs. Kelly was ID'd by echo block master count board and frequent daily contact.

(*Id.*)

Kelly alleges that the misconduct ticket he received from Defendant Labelle was retaliatory. To exhaust a retaliatory misconduct ticket, Kelly needed to assert his retaliation claims during his misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. Kelly states that, on December 20, 2019, he was given a copy of the misconduct hearing report, despite never receiving notice of the hearing. (ECF No.

10

1, PageID.6.)  Kelly says that he was not allowed to attend a misconduct hearing. (*Id.*)  The misconduct hearing report states:

> Hearing Investigation Read to and Discussed with Prisoner
>
> **EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**
>
> Per C/O Shagena at 0940 hours the prisoner, when asked if he was going to his hearing, said he was not; I take that as a refusal and hold this hearing in his absence.  MDOC PD 03.03.105(H)
> This ALJ then read the misconducts and combined them for hearing purposes as they arose from the same set of facts; entered a not guilty and noted the prisoner said he had a statement.  The H.I. told him to place it on the bars and go to the back of the cell.  The prisoner did not and told the H.I. he would get her.  The prisoner failed to comply with the staff members directions to ensure her safety.  This tells me the prisoner did not want his statement a part of the record.
> Misconduct check list. The misconduct sanction screening form.
>
> **FINDINGS:**
> 1. Disobeying a Direct Order.  The officer told the prisoner to stop for a shakedown as he was being taken to yard.  The prisoner heard and understood and could have complied.  Instead he told Officer LaBelle he was not touching him and then moved.  He was then told to return to the cell and told the officer he was not going to do so.  He failed to do what he was told
>
> **REASONS FOR FINDINGS**
>
> and capable of doing.
> 2. and 3. Assault and Battery - staff victim (008)MDOC  PD 03.03.105 Intentional, non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another; physical resistance or physical interference with an employee. The prisoner is guilty of two charges of assault and battery as he actively resisted the two officers as they tried to restrain him after failing to allow himself to be shaken down for yard.  The prisoner was swinging his arms and kicking his feet while the two officers attempted to subdue him.  During the incident his elbow struck the officer near his right eye and temple area.  While the officer was then taken off site to a medical facility, I conclude that it is the prisoner's intent rather than the effect of what he did which determines the actual charge.  In this instance he did not specifically single out the officer to attempt to injure his eye.  It was part of his general resistance to the officers.  In his struggling with the two staff he resisted officer LaBelle by pushing against him and then struck the other with his elbow.

(ECF No. 37-2, PageID.215.)

Kelly was found guilty on each charge.  Kelly requested a rehearing.  (ECF No. 37-2, PageID.214.)  Kelly never raised the issue of retaliation in his request for a rehearing.  Kelly stated that he sought a rehearing because he was denied due process and the hearing process was unfair.  The rehearing request states:

> Briefly explain why you believe a rehearing should be ordered: (1st) I tryed to give the hearing's Investigater my hand written statement with the witnesse's I needed called out, but the hearing Investigator violated my due process rights by Refusing my statment's for Both Class 1 Misconducts. As you see on this Class 1 Misconduct Hearing Report, she stated as in the H.I said I told her Qoute (I would get her) & she also said I did not comply when she told me to place the paper's on the Bar's & step back that's the reason why she did not take my statement, But In this Hearings Investigation Report Hearings Investigator P. Basal Changed her story up & said I did place the statement's on the bar's & added more to her story & said that I stated You are afraid of me, And she also said I stated You play with me Bitch and I swear you'll get it! As you see she's changing up here story because she's lieing! (2nd) Since I'm on no out of cell movement the c/o lied & said I did not want to go to my Misconduct hearing! But Nobody ever asked me do I want to go to my hearing to get my side of what happend!
> last, I got Rail Road on these's misconduct's & my due process was violated & there was no way I could defend my self & prove my case! Which I had no chance to do so. The c/o's lied & the Hearings officer-lied! I need a fair shot to prove my case without all the lie's Please! Thank You! Shaquan Kelly #792018 I need a Rehearing Please!
> C & C.

(ECF No. 37-2, PageID.214.)  Kelly failed to raise retaliation in his request for a rehearing. Kelly's request for a rehearing was denied. (*Id.*, PageID.213.)

In the opinion of the undersigned, Kelly failed to exhaust his claim that the misconduct ticket was written to retaliate against him because he did not assert retaliation as a reason for his receipt of misconduct tickets either prior to his hearing or upon his request for a rehearing.

### V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant's motion for summary judgment. It is recommended that the Court dismiss Kelly's third claim, which asserts a First Amendment retaliation claim against CO Labelle for allegedly writing a misconduct ticket against Kelly.

If the Court accepts this recommendation, two claims will remain against Defendant Labelle in his personal capacity: (1) Kelly's Eighth Amendment excessive

force claim; and (2) Kelly's First Amendment retaliation claim relating to a pat-down search conducted by Labelle and an assault.

Dated:   November 3, 2021                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).